IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PROXENSE, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 6:23-cv-00319-ADA |

**DEFENDANT MICROSOFT CORPORATION'S OPPOSED MOTION TO TRANSFER
<u>VENUE TO THE WESTERN DISTRICT OF WASHINGTON</u>**

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................ 1

II.  STATEMENT OF FACTS ............................................................................................. 2

    A.  Proxense's Allegations of Infringement and Prior Contacts ...................................... 2

    B.  Microsoft Products: Witnesses and Documents ........................................................ 3

    C.  Open Standards Related to Authentication: Witnesses and Documents .................... 4

    D.  Proxense Company and Technology: Witnesses and Documents ............................... 6

III. LEGAL STANDARD ..................................................................................................... 7

IV.  THE WESTERN DISTRICT OF WASHINGTON IS CLEARLY THE MORE
     CONVENIENT VENUE ................................................................................................. 8

    A.  This Action Could Have Been Brought in the WDWA .............................................. 8

    B.  The Private Interest Factors Favor Transfer ............................................................... 8

        1.  Relative Ease of Access to Sources of Proof ................................................. 8

        2.  Availability of Compulsory Process ............................................................... 9

        3.  Attendance of Willing Witnesses .................................................................. 10

    C.  The Public Interest Factors Favor Transfer .............................................................. 14

        1.  Local Interests ............................................................................................... 14

        2.  Court Congestion .......................................................................................... 15

        3.  Familiarity with the Governing Law and Conflicts of Law ......................... 15

V.   CONCLUSION ............................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*10Tales, Inc. v. TikTok Inc.*,
  No. 6:20-CV-810-ADA, 2021 WL 2043978 (W.D. Tex. May 21, 2021) ..............................11

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010).............................................................................................10, 12

*Affinity Labs of Texas v. Samsung Electronics Co., Ltd.*
  968 F. Supp. 2d 852 (E.D. Tex. Sept. 18, 2013)...............................................................13, 14

*In re Apple, Inc.*,
  581 F. App'x 886 (Fed. Cir. 2014) ........................................................................................9, 10

*In re Apple, Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020).....................................................................................8, 12, 14

*Correct Transmission LLC v. Adtran, Inc.*,
  No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ..........................13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).............................................................................................10, 15

*In re Google LLC*,
  No. 2021-144, 2021 WL 3378938 (Fed. Cir. Aug. 4, 2021) ..................................................12

*In re Hoffman-La Roche, Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..............................................................................................9, 14

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) .................................................................................................8

*In re Juniper Networks, Inc.*,
  2021-156, 2021 WL 4519889 (Fed. Cir. Oct. 4, 2021) .........................................................15

*In re Netscout Systems, Inc.*,
  2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ........................................................12

*In re Pandora Media, LLC*,
  2021-172, 2021 WL 4772805 (Fed. Cir. 2021) .....................................................................10

*Parus Holdings, Inc. v. Microsoft Corp.*,
  No. 6:21-CV-570-ADA, 2022 WL 17420391 (W.D. Tex. Nov. 29, 2022)...........................11

*Proxense, LLC v. Samsung Elecs. Co.*,
  No. 6:21-cv-210 (W.D. Tex.).......................................................................................... *passim*

*Super Interconnect Techs. LLC v. Google LLC,*
  No. 6:21-cv-00259-ADA, 2021 WL 6015465 (W.D. Tex. Nov. 8, 2021) ..............................8

*In re TS Tech USA Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008)...................................................................................15

*In re Volkswagen AG,*
  371 F.3d 201 (5th Cir. 2004) .................................................................................7, 8

*In re Volkswagen of Am., Inc.,*
  545 F.3d 304 (5th Cir. 2008) ......................................................................................7

*Zentian Ltd. v. Apple, Inc.,*
  W-22-CV-00122-ADA, 2023 WL 4167746 (W.D. Tex. June 13, 2023) ................................9

*In re Zimmer Holdings, Inc.,*
  609 F.3d 1378 (Fed. Cir. 2010)..................................................................................13

**Statutes**

28 U.S.C. § 1400(b) .........................................................................................................8

28 U.S.C. § 1404(a) ....................................................................................................7, 9

Familiarity with the Governing Law...............................................................................15

## I.    INTRODUCTION[1]

The murky reach of Proxense's infringement allegations in this case—ranging from an undefined concept of Microsoft's "password-less architecture" to authentication standards shaped well before the priority dates of the patents-in-suit—are firmly anchored by relevant witnesses and documents in the Western District of Washington.

***Microsoft's technologies and teams are rooted firmly in the WDWA.*** In its Complaint, Proxense scatters names of various Microsoft products, such as Microsoft's Authenticator App, Windows Hello, and Azure Active Directory (now called Entra ID), without explaining how they purportedly infringe. However, if these are accused products, the overwhelming majority of Microsoft's relevant source code, documents, and employees are in the WDWA. *See* Ex. 1 (Shah Decl.) ¶ 4 (discussing Microsoft's Authenticator App); Ex. 2 (Gilbert Decl.) ¶ 4 (discussing Windows Hello); Ex. 3 (Dawoud Decl.) ¶ 4 (discussing Microsoft Entra). And to the extent this matter involves hardware components such as biometric sensors, that implicate historical versions of physical products and code, these are stored in the WDWA. Ex. 4 (Rosenbloom Decl.) ¶ 13.

***Proxense is also based in the Pacific Northwest without a WDTX connection.*** Proxense's principal place of business is in Bend, Oregon. In the section of its Complaint describing its company and technologies, Proxense only identifies ties to Oregon: Mr. John Giobbi (CEO and named inventor); Mr. Matt Davio (VP of Business Development); and Dr. Ryan Gallivan ("supporter of the technology"). Compl. ¶¶ 34-40. Proxense did not allege any evidence related to its company, products, or patents located in the WDTX.

---

[1] Microsoft and Proxense have conferred regarding this Motion pursuant to Local Rule CV-7(g). Proxense opposes this Motion.

Proxense's only connection to the WDTX is its previous suit against Samsung. *Proxense, LLC v. Samsung Elecs. Co*., No. 6:21-cv-210 (W.D. Tex.). Though this Court undoubtedly spent time and effort for that case, it involved only two out of the six patents-in-suit (¶¶ 17-21), different defendants (¶ 1), and completely different accused technology (¶ 40). Even Proxense stresses that "the ***accused infringing technologies*** in the two cases ***are different***." Dkt. No. 25 at 20. Accordingly, Proxense's previous suit should not outweigh all other factors.

*****Relevant third parties strengthen the connection to the WDWA*.** Proxense's opaque Complaint repeatedly invokes various open standards related to "identity federation"[2] and password-less authentication.[3] Yet, Microsoft was one of the original developers of the identity federation protocols and standards. Ex. 5; Ex. 6. To the extent password-less authentication standards are relevant, current and former Microsoft employees located in the WDWA—including third party Mr. Michael Jones—helped shape those too. Ex. 7 (Chen Decl.) ¶¶ 2, 3. And while Proxense dismissed (at least for now) its claim of willful infringement to avoid early motions practice, Proxense's Complaint retains its allegations of prior contacts with Microsoft.  One such contact was with Mr. Michael Perla, a former Microsoft employee who is now retired, living in the WDWA.  Ex. 8 (Perla Decl.) ¶¶ 4, 5.  Neither Mr. Jones nor Mr. Perla are willing to voluntarily attend trial in the WDTX.

## II.    STATEMENT OF FACTS

### A.    Proxense's Allegations of Infringement and Prior Contacts

Proxense filed this suit on May 2, 2023. Compl. at 1. Proxense accuses Microsoft of

---

[2] "Identity federation" is the concept of linking a user's identity across different service providers, so that it is unnecessary to sign in over-and-over again.

[3] *See* Compl. ¶¶ 29-32 (discussing identity federation); *id*. ¶¶ 30-33, 56, 61, 67, 70, 91, 92, 94, 98, 99, 101-103, 125, 126, 128, 132, 133, 135-137, 159, 160, 162, 167, 169-171, 188, 189, 191, 193-196, 211, 212, 214, 216-219, 234, 235, 237, 239-242 (discussing FIDO2, OpenID, and WebAuthn standards).

infringing U.S. Patent Nos. 8,352,730; 8,886,954; 9,298,905; 8,646,042; 9,679,289; and 10,073,960. *Id.* ¶¶ 21-26. The '730, '954, and '905 Patents relate to "an integrated device that persistently stores biometric data for a user in a tamper-resistant format." *Id.* ¶¶ 21-23, 28. The '042, '289, and '960 Patents relate to "utilizing personal digital keys for verifying a user in order to enable applications, functions or services." *Id.* ¶¶ 24-26, 28.

Proxense ties its allegations to the amorphous concept of "password-less architecture," not a Microsoft product or integrated offering. *See, e.g., id.* ¶¶ 33, 46. Proxense then describes such an architecture as comprising three generic components such as "identity platform," "authenticators," and "resources." *Id.* ¶ 47. Microsoft product names—Microsoft Authenticator App, Windows Hello, and Azure Active Directory (now Entra ID)—are strewn about the Complaint, with no description of the allegations asserted against them. *Id.* ¶¶ 50, 51.

Proxense alleges prior contacts between the parties: a) discussions in 2010 "for the purpose of potentially integrating Proxense's proprietary secure authentication technology utilizing biometric authentication into Microsoft products;" and b) a letter that Proxense sent to Microsoft on July 29, 2016 "advising it as to Proxense's 'over 30 patents[.]'" *Id.* ¶¶ 41, 42.

### B. Microsoft Products: Witnesses and Documents

Microsoft is a Washington corporation headquartered in Redmond, which is in the WDWA. Ex. 3 ¶ 4.

The teams responsible for the research, design, and development of the accused functionalities of (1) Microsoft Entra ID (previously known as Azure Active Directory), (2) Windows Hello and (3) the Microsoft Authenticator application are largely in the WDWA, with only one individual on those teams located in the WDTX, and his responsibilities overlap with others in the WDWA. Ex. 3 ¶ 4; Ex. 2 ¶¶ 4-5; Ex. 1 ¶ 4; Ex. 9 (Barrera Isla Decl.) ¶¶ 4-5; Ex. 4 ¶¶ 6-10.

These teams have records, such as electronic documents, that are stored in shared locations and can only be accessed by people with proper credentials/access rights. Ex. 3 ¶ 5; Ex. 2 ¶ 7; Ex. 1 ¶ 7. Other than the remote employee in Austin, no other individuals in the WDTX are believed to have access rights to these records. *Id*. Moreover, external vendors for products such as fingerprint sensors may sometimes meet in-person in Redmond, with no option to join remotely. Ex. 2 ¶ 8.

The sole Microsoft employee identified in the Complaint, Mr. Justin Santos, part of the Customer Experience team, responds to customer inquiries. Compl. ¶ 9; Ex. 10 (Santos Decl.) ¶¶ 4, 5. Mr. Santos does not perform (and has never performed) development work on the features and functionalities of Microsoft Entra ID, Authenticator App, or Windows Hello. Ex. 10 ¶ 6.

### C. Open Standards Related to Authentication: Witnesses and Documents

Proxense characterizes its inventions as related to identity federation and password-less authentication, and applies the same framework to allege Microsoft infringes. Specifically:

> One such architecture is "federated authentication" (also known as "federated identity"), which relies on an external trusted system to authenticate users . . . One such federated architecture is OpenID Connect . . . Authentication protocols geared towards eliminating passwords include WebAuthn and its derivative, FIDO2, an open authentication standard developed by the FIDO alliance.

Compl. ¶¶ 30-32.[4] Proxense alleges that it was "years ahead of the industry" including Microsoft. *Id*. ¶ 39.  However, if these architectures and standards are at issue here, Microsoft played a key role in developing these technologies as far back as 2003, before Proxense's earliest priority date for any of its patents-in-suit. Ex. 11.

By 2003, Microsoft developed Windows communications technologies, code-named "Indigo," which provided capabilities for authentication across different services on a network:

---

[4] *See* Compl. ¶¶ 33, 56, 70, 99, 101-103, 133, 135-137, 167, 169, 171 (accusing Microsoft by citing OpenID Connect); *id*. ¶¶ 56, 61, 67, 188, 193, 211, 216, 234, 239 (accusing Microsoft by citing FIDO 2); *id*. ¶¶ 91, 92, 94, 98, 102, 125, 126, 128, 132, 136, 159, 160, 162, 166, 170, 189, 191, 194-196, 212, 214, 217-219, 235, 237, 240-242 (accusing Microsoft by citing WebAuthn).

> [H]ow can access to a service be limited to only those authorized to use it? . . . Indigo provides the ***core security functions of authentication***, message integrity, message confidentiality, and authorization. Indigo's approach to the first three of these relies ***primarily on bindings*** . . . Letting developers ***build secure applications without exposing them*** to overwhelming complexity has proven to be challenging in the past.

Ex. 5 (emphasis added); *see also* Ex. 12. In 2006, Indigo evolved into "Windows Communication Foundation" (WCF), which retained the use of bindings that allowed for authentication of messages across platforms. *Id*.; Ex. 13. In 2007, Microsoft launched "Windows Identity Foundation" (WIF), a programming model that complemented WCF by providing a uniform framework for authentication across different domains. Ex. 14; Ex. 31.

With products such as Windows Server 2003, Microsoft has long supported both federated identity and password-less authentication. Ex. 32 (describing smart card authentication). Boxed copies of software relating to Windows Server can be collected from Microsoft Archives in Redmond. Ex. 4 ¶ 14; Ex. 6. Microsoft also developed Active Directory Federation Services ("ADFS"), providing identity federation across domains so users do not have to log in separately for each domain. Ex. 15. Microsoft launched ADFS in 2005. *Id*. By 2009, Microsoft added WS-Federation, a protocol that defines how different domains can implement identity federation, to ADFS. Ex. 16 at 50-58. Further, Microsoft employees, such as Chris Kaler and Hervey Wilson, located in the WDWA helped develop Microsoft's identity federation technologies. Ex. 17.

Over the next decade, FIDO2, OpenID, and WebAuthn were launched to unify and spread implementation of password-less authentication and identity federation across web applications. Ex.

18. Proxense repeatedly invokes OpenID Connect, FIDO 2, and WebAuthn in its Complaint and claim charts[5] to substantiate its claims of infringement by Microsoft's password-less "architecture."[6]

Current and former Microsoft employees, including Mr. Michael Jones, have shaped these standards. Ex. 7 ¶ 2; Ex. 33. Mr. Jones left Microsoft in May 2023, still lives in the WDWA, and "would be unwilling to voluntarily travel to Texas for trial in this matter." Ex. 4 ¶ 5; Ex. 7 ¶ 4.

### D.    Proxense Company and Technology: Witnesses and Documents

Proxense is a Delaware company with its principal place of business in Bend, Oregon. Compl. ¶ 1. Proxense's CEO and a named inventor, Mr. John Giobbi, resides in Bend, Oregon. *See* Ex. 21. Proxense's VP of Business Development, Mr. Matt Davio, also appears to reside in Oregon. *See* Ex. 22. Mr. Michael Osborn appears to be a venture capitalist based in Oregon with ties to Proxense. *See* Ex. 23. Proxense's Complaint identified no employees or office in the WDTX.

The Complaint alleges Proxense's investment in and development of "innovative technologies." Compl. ¶¶ 34-35. In 2009, Proxense's website reflected its developmental connection to the WDWA, not the WDTX. Specifically, Proxense boasted that it used Microsoft's WCF authentication framework. According to Proxense, WCF was one of the "powerful development ***tools & technologies from Microsoft***" that it used to "offer its customers powerful, innovative products & solutions." Ex. 24. In an interview, Mr. Davio confirmed that, in Proxense's RFID and Encrypted Biometric Tracking technology, "the ***communication system is utilizing technology from Windows Communication Foundation***." *See* Ex. 25 (emphasis added). Proxense would later call Microsoft a "key partner[]" with which Proxense's technology "integrates" and

---

[5] *See, e.g.,* Ex. 28 at 40, 42, 43 (referencing OpenID Connect); *id.* at 2, 4, 19 (referencing FIDO 2); *id.* at 2, 19-22 (referencing WebAuthn); Ex. 29 at 31-35 (referencing OpenID Connect); *id.* at 2, 3, 5 (referencing FIDO 2); *id.* at 3, 15, 16 (referencing WebAuthn); Ex. 30 at 3-5, 7-9, 11 (referencing FIDO 2); *id.* at 5-7, 9-11 (referencing WebAuthn).
[6] *See supra*, n. 4.

"aligns." *See* Ex. 26.

Proxense alleges that: "[i]n 2010, Proxense engaged in discussions with Microsoft for the purpose of potentially integrating Proxense's proprietary secure authentication technology utilizing biometric authentication into Microsoft products." Compl. ¶ 41. Mr. Michael Perla, a former Microsoft employee, had "interactions with Proxense as part of [his] work at Microsoft" "[i]n or around 2010[.]" Ex. 8 ¶ 3. Mr. Perla is now retired and lives in Mercer Island, WA. *Id.* ¶ 4. Mr. Perla is unwilling to voluntarily travel to Texas for trial and travelling to Texas for trial would be "extremely inconvenient" for him if he was required to do so. *Id.* ¶¶ 5, 6. Potential Microsoft, Proxense, and third party witnesses are summarized in Attachment A.

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312-13 (5th Cir. 2008). Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II*, 545 F.3d at 315. In evaluating convenience, courts weigh both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and

(4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

## IV.    THE WESTERN DISTRICT OF WASHINGTON IS CLEARLY THE MORE CONVENIENT VENUE

### A.    This Action Could Have Been Brought in the WDWA

This patent infringement case could have been brought in the WDWA. 28 U.S.C. § 1400(b); *see* Compl. ¶ 3 ("Microsoft is a corporation organized and existing under the laws of the State of Washington"); Ex. 3 ¶ 4.

### B.    The Private Interest Factors Favor Transfer

#### 1.    Relative Ease of Access to Sources of Proof

The location of sources of proof remains a meaningful factor in the analysis, despite technological advances that reduce the significance of documents' physical location. *See In re Juniper Networks, Inc.,* 14 F.4th 1313, 1321 (Fed. Cir. 2021) (citing *Volkswagen II,* 545 F.3d at 316). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple, Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) ("*Apple II*"). "[T]he movant need not show that all relevant documents are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer." *Super Interconnect Techs. LLC v. Google LLC*, No. 6:21-cv-00259-ADA, 2021 WL 6015465, at *6 (W.D. Tex. Nov. 8, 2021).

As described in § II.B, *supra*, the vast majority of Microsoft employees involved in the research, development, and design of Microsoft products named in the Complaint are in the WDWA. Ex. 3 ¶ 4; Ex. 2 ¶ 4; Ex. 1 ¶ 4; Ex. 17 (identifying Chris Kaler and Hervey Wilson). Key Microsoft documents relating to the research, design, and development of the accused products are stored in shared locations that can only be accessed by people with proper credentials/access rights, who are all located outside of the WDTX except for Mr. Barrera Isla. Ex. 3 ¶ 5; Ex. 2 ¶ 7; Ex. 1 ¶ 7; Ex. 9 ¶ 6.

Additionally, individuals most knowledgeable about Microsoft's licensing and finance are also located in the WDWA. Ex. 4 ¶¶ 11-12.

External vendors for products such as fingerprint sensors may sometimes meet in Redmond with no option to join remotely. Ex. 2 ¶ 8. At least one boxed copy of an older Microsoft fingerprint reader, and boxed copies of archival software relating to Windows Server, which implements federated identity through ADFS, can also be collected in Redmond. *Id*. ¶ 14; Ex. 4 ¶ 13; Ex. 6.

Where more evidence is created and maintained in the WDWA than in the WDTX, as here, this factor weighs in favor of transfer. *Zentian Ltd. v. Apple, Inc.,* W-22-CV-00122-ADA, 2023 WL 4167746, at *7 (W.D. Tex. June 13, 2023).

### 2. Availability of Compulsory Process

Given the breadth and lack of focus of Proxense's accusations, coupled with Proxense's alleged prior contacts with Microsoft, there are several witnesses for which availability of compulsory process in the WDWA is a key factor.

Transfer is favored when a transferee forum has absolute subpoena power over a greater number of third-party witnesses. *In re Hoffman-La Roche, Inc*., 587 F.3d 1333, 1337-38 (Fed. Cir. 2009) (granting transfer where transferee forum had absolute subpoena power over a greater number of non-party witnesses). A court, however, may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B)(i). In the Fifth Circuit, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the

9

transferor venue." *Id.* A "witness is presumed to be unwilling" when there is no indication that he or she is willing. *In re Pandora Media, LLC*, 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. 2021).

Microsoft is not aware of any relevant, third-party witnesses who reside in this district. The ones that Microsoft has identified thus far are located in the WDWA. This includes former Microsoft employee, Mr. Perla, who interacted with Proxense while employed at Microsoft around 2010. Compl. ¶ 41; Ex. 8 ¶ 3. Additionally, former Microsoft employee Mr. Jones, who was involved on the part of Microsoft in drafting and authoring certain portions of the Open ID Connect and FIDO 2 standards, including the WebAuthn standard, is located in Redmond. Ex. 11; Ex. 7 ¶ 2. None of these third parties are willing to travel to Texas voluntarily to testify at trial. Ex. 8 ¶ 5; Ex. 7 ¶¶ 4.

Thus, this factor favors transfer. *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (finding that subpoena power of the transferee court "surely tips in favor of transfer.").

### 3. Attendance of Willing Witnesses

The "convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).

The willing witnesses in this matter include:

- **Microsoft Entra ID (previously Azure Active Directory).** Mr. Peter Dawoud, located in Redmond, WA, is a Principal Manager Product Management who leads a team that works on Microsoft Authenticator and Microsoft Azure MFA services. Ex. 3 ¶¶ 1, 3. Mr. Dawoud's team, which is based out of Microsoft's headquarters in Redmond, works on the research, development, design, and source code of Authenticator app technology and its integration with Microsoft products, which is part of the Microsoft identity platform. *Id.* ¶ 4. Mr. Dawoud is not aware of any past or present team members located in Texas. *Id.*

- **Windows Hello.** Mr. Robert Gilbert, located in Redmond, WA, is the Principal Software Engineer Lead on Windows Hello. Ex. 2 ¶¶ 1, 3. Mr. Gilbert's team, called Passwordless Core Dev, works on the research, development, design, source code, and implementation of password-less authentication for Windows Hello, based out of Redmond. *Id.* ¶ 4. Out of his ten-member team, only one employee resides in Austin. *Id.* ¶ 5. There is a parallel team, the Program Manager team, that focuses generally on customer engagement, requirements gathering, scenario/feature planning, and project management for password-less authentication technology in Windows Hello. *Id.* ¶ 6. All four employees on this team are

located in or around Redmond. *Id.*

- **Microsoft Authenticator application.** Mr. Samir Shah, located in Redmond, WA, is a Principal Group Engineering Manager who works on Microsoft's Authenticator App. Ex. 1 ¶¶ 1, 3. Mr. Shah's team works on research, development, design, source code, and implementation of the Microsoft Authenticator App is based out of Redmond. *Id.* ¶ 4. Mr. Shah is not aware of any past or present team member who is located in Texas. *Id.*

The only potentially relevant employee identified in the WDTX is Mr. Barrera Isla, who lives in Austin for personal reasons. His responsibilities directly overlap with those in the WDWA, and he almost exclusively works with individuals and documents located in the WDWA. Ex. 9 ¶¶ 4-6.[7]

Proxense similarly does not appear to have any likely trial witness located in the WDTX. Proxense's principal place of business and witnesses are located in Oregon, and alleges none in the WDTX. Compl. ¶ 2. Indeed, the WDWA would be the far more convenient forum for Proxense's own witnesses. Moreover, Proxense is more likely to have ties to the WDWA due to its self-described reliance on Windows Communication Foundation, and "key" partnership with Microsoft. *See* Ex. 24; Ex. 25; Ex. 26.

This Court has found that the "cost of attendance and convenience of willing witnesses" factor "heavily favor[ed] transfer" even when "one potentially relevant Microsoft employee resides in Texas." *Parus Holdings, Inc. v. Microsoft Corp.*, No. 6:21-CV-570-ADA, 2022 WL 17420391, at *5 (W.D. Tex. Nov. 29, 2022); *10Tales, Inc. v. TikTok Inc.*, No. 6:20-CV-810-ADA, 2021 WL 2043978, at *4 (W.D. Tex. May 21, 2021) ("little consideration should be given to the few witnesses [] identified from TikTok's Austin office" who "have not been established as necessary to this

---

[7] The only Microsoft employee located in Texas that Proxense identified in its Complaint, Mr. Justin Santos, works in a customer service position on the Customer Experience team. Compl. ¶ 9; Ex. 10 ¶¶ 4, 5. Mr. Santos does not perform, and has never performed, any research or development work on the features and functionalities of the Microsoft Entra ID, Windows Hello, or the Authenticator application. *Id.* ¶ 6.

case"); *Apple II,* 979 F.3d at 1340 ("movant need not show that all relevant [evidence] are located in the transferee venue to support a conclusion that the location of relevant documents favors transfer").

If this case remains in Texas, both Microsoft and Proxense witnesses would spend days away from home and work, as opposed to approximately one day if the trial takes place in the WDWA. *See, e.g., In re Netscout Systems, Inc.*, 2021-173, 2021 WL 4771756, at *3 (Fed. Cir. Oct. 13, 2021). Travel length imposes additional burdens even beyond time, such as meal and lodging expenses. *Acer*, 626 F.3d at 1255.

Lastly, contrary to Proxense's suggestion in the Complaint, the presence of Microsoft's data centers or offices within the state of Texas have no connection to the issues in this litigation, and thus does not disfavor transfer to the WDWA. Compl. ¶¶ 8, 11, 14. *In re Google LLC*, No. 2021-144, 2021 WL 3378938, at *1 (Fed. Cir. Aug. 4, 2021) ("sale of a product in . . . forum should not negate this factor being weighed in favor of transfer"). Where, as here, the overwhelming majority of the relevant witnesses are located in the WDWA, this factor weighs strongly in favor of transfer. *Apple IV*, 2021 WL 5291804, at *3–4.

### 4.    No Other Practical Problems

There are no practical problems that weigh meaningfully against transfer, and transferring the case now would not cause any delay.

While this Court has ruled on claim construction in the prior *Samsung* litigation for two of the six patents-in-suit, that fact does not control or dominate the transfer analysis. *See id*. at Dkt. No. 1 (Compl.), ¶¶ 17-21. As an initial matter, the claims of the majority of the patents-in-suit in this case remain unconstrued. Specifically, out of the twenty-one claims asserted in Proxense's preliminary infringement contentions in this case, only three of them remained at play in the *Samsung* litigation. *See id.* at Dkt. No. 142 at 3.

Moreover, Proxense concedes that "the ***accused infringing technologies*** in the two cases ***are***

***different***." Dkt. No. 25 at 20 (contrasting lawsuit against Samsung with lawsuit against Microsoft).

In *Samsung*, Proxense accused Samsung phones and Samsung Pay, a mobile payment technology

unique to Samsung. *See Proxense v. Samsung*, Dkt. No. 1 ¶ 40, Dkt. No. 142 at 3 ("Proxense alleges

that the Samsung Pay mobile payment software on Samsung smartphones directly infringes…"); Ex.

34. This case, on the other hand, does not involve any mobile phone or payment technology

manufactured or developed by Microsoft. There is no product at issue that meaningfully overlaps

with the accused products in *Samsung*. Instead, Proxense tries to accuse a Microsoft "architecture."

In this type of situation, courts have found that different accused products can favor transfer

even if the court has already ruled on claim construction for some of the patents-in-suit:

> If these were the only patents involved, this factor would tilt the balance toward
> retention. *See Vistaprint*, 628 F.3d at 1347. But in this case [the plaintiff] chose to add
> three more patents. And, while it should not affect claim construction or invalidity, ***the***
> ***accused technology is different*** . . . . Although the court is generally familiar with
> Defendants' products from other cases, it faces about the same learning curve as a judge
> in [transferee district] when considering the other three patents and learning the
> technology of the accused devices for purpose of infringement analysis.

*Affinity Labs of Texas v. Samsung Electronics Co., Ltd.* 968 F. Supp. 2d 852, 859 (E.D. Tex. Sept.

18, 2013). Where there is minimal overlap in infringement issues and defendants, the Federal Circuit

has stated that related cases in the same forum when initially filed does not "negate[] the significance

of having trial close to where most of the identified witnesses reside and where the other convenience

factors clearly favor [transfer]." *In re Zimmer Holdings, Inc*., 609 F.3d 1378, 1382 (Fed. Cir. 2010).

That is, "the judicial economy of having the same judge handle multiple suits involving the same

patents should [not] dominate the transfer inquiry." *Correct Transmission LLC v. Adtran, Inc*., No.

6:20-CV-00669-ADA, 2021 WL 1967985, at *5 (W.D. Tex. May 17, 2021).

The infringement analysis in *Samsung* is unlikely to overlap with the facts here, since part of

Samsung's non-infringement defense appears to have been based on whether Samsung devices with the preinstalled version ("stub app") of the Samsung Pay app could infringe or whether Samsung devices without a credit or debit card number registered with Samsung Pay could infringe. *See Proxense v. Samsung*, Dkt. No. 100 at 7-14, 21-23. This not only involves different accused products, but a different "accused infringing technology"—to use Proxense's own words. Dkt. No. 25 at 20.

Any gains to judicial economy by maintaining the case in the WDTX would thus be minimal. Accordingly, this factor is neutral and does not outweigh the other public and private interest factors, which still tip the balance resoundingly in favor of transfer. *See Affinity Labs,* 968 F. Supp. 2d at 860.

### C.    The Public Interest Factors Favor Transfer

#### 1.   Local Interests

The WDWA has a strong local interest because it is the location with the most "significant connections between [the venue] and the events that gave rise to [the] suit." *Apple II*, 979 F.3d at 1344-45.  "The fact that infringement is alleged in the [WDTX] gives that venue no more of a local interest than . . . any other venue." *Samsung*, 2 F.4th at 1380.

Not only is Microsoft headquartered in the WDWA with its witnesses overwhelmingly based there, but Microsoft's relevant work on the research, design, development, and implementation of the products identified in the Complaint occurred in the WDWA. § IV.B, *supra*. Because this suit "calls into question the work and reputation of several individuals residing" in the WDWA where the accused features and products were "developed"—witnesses necessary to establish Microsoft's independent development of the alleged infringing features in the accused products—the WDWA's interest in this matter is "self-evident." *Hoffman*, 587 F.3d at 1336, 1338. The WDWA thus has a stronger local interest than the WDTX.

### 2. Court Congestion

"[T]he prospective speed with which [a] case might be brought to trial" is not "of particular significance" in the transfer analysis. *Samsung*, 2 F.4th at 1380. Even if Proxense could show a need for a quick resolution, this factor is neutral.

The Federal Circuit has "repeatedly noted that [] a proper analysis [] looks to the number of cases per judgeship and the actual average time to trial rather than aggressively scheduled trial dates.[8]" *In re Juniper Networks, Inc.*, 2021-156, 2021 WL 4519889, at *3 (Fed. Cir. Oct. 4, 2021). The number of cases per judgeship favors the WDWA, especially considering the number of new judges confirmed recently. Ex. 27 (confirming seven new judges in the WDWA since 2021, including two in July 2023). Though the WDTX is two months faster to trial on average, the ability of this Court to resolve a case two months quicker is not enough to retain this case in the WDTX. *See Genentech*, 566 F.3d at 1347 (noting that when other factors weigh in favor of transfer, "the speed of the transferee district court should not alone outweigh all of those other factors.").

### 3. Familiarity with the Governing Law and Conflicts of Law

The last two factors are neutral. There are no perceived conflicts of law and both districts are equally qualified to apply patent law. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). The WDWA also has patent local rules.[9]

## V.    CONCLUSION

Because three of the private and one of the public factors favor transfer and the remaining factors are neutral, this case should be transferred to the WDWA pursuant to 28 U.S.C. § 1404(a).

---

[8] There are 834 pending cases/judge in the WDTX, and 436 pending cases/judge in the WDWA. The number of case filings in the WDTX is 13,732 with a 28.2 month median time to trial. The number of case filings in the WDWA is 3,511 with a 30.1 month median time to trial. *See* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/03/31-1.
[9] *See* https://www.wawd.uscourts.gov/sites/wawd/files/LRPatentRules-Final.pdf.

Date: August 21, 2023

Respectfully submitted,

_/s/ Betty Chen_
Betty Chen
TX Bar No. 24056720
bchen@fr.com
FISH & RICHARDSON P.C.
One Congress Plaza
111 Congress Avenue, Suite 810
Austin, TX 78701
Telephone: (512) 472-5070
Facsimile: (512) 320-8935

Jason W. Wolff
CA Bar No. 215819
wolff@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Melissa Smith
Texas Bar Number 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

_Attorneys for Defendant Microsoft_
_Corporation_

## <u>CERTIFICATE OF SERVICE</u>

The hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on August 21, 2023. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Betty Chen*
Betty Chen

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule CV-7(g), counsel for the parties met and conferred telephonically on August 11, 2023. Wen Wu attended for Plaintiff. I attended for Defendant. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated the motion would be opposed.

*/s/ Betty Chen*
Betty Chen

17